Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)
**STINAR LANNEN, PLLC**
280 W. Maple Rd., Ste. 200
Birmingham, Michigan 48009
Tel: (248) 565-2690
Fax: (248) 565-2691
Email: Parker@StinarLannenLaw.com
Patrick@StinarLannenLaw.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: APPLE AIRTAG MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>JANE J.F. DOE - 24,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC.,<br><br>Defendant. | MDL No. 3199<br>Case No. 5:26-md-03199-NW<br>Member Case No. __________<br>Hon. Noël Wise<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Negligence (California Law)<br>2. Strict Products Liability—Design Defect (California Law)<br>3. Products Liability—Failure to Warn (California Law)<br>4. UCL—Unlawful Prong (California Law)<br>5. UCL—Unfair Prong (California Law)<br>6. Strict Products Liability—Design Defect (Arizona Law) (in the alternative)<br>7. Strict Products Liability—Failure to Warn (Arizona Law) (in the alternative)<br>8. Negligence (Arizona Law) (in the alternative)<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Jane J.F. Doe - 24 (“Plaintiff”), through counsel, brings this Complaint against Defendant Apple Inc. She files it directly in In re Apple AirTag Marketing, Sales Practices and Products Liability Litigation, MDL No. 3199, under the Court’s direct-filing order. She alleges as follows, on personal knowledge as to herself and on information and belief as to all other matters.

## INTRODUCTION

1. Defendant Apple Inc. (“Apple”) must be held accountable for its continuing failure to protect the public from being stalked with its product, the Apple AirTag® (“AirTag”).

2. In 2021, Apple released the AirTag. It knew the device could—and would—be bought and used by abusive, controlling people to track, coerce, and endanger their victims.

3. Apple also knew in 2021 that adequate safeguards were not yet in place. It released the AirTag anyway. Since then, Apple has played catch-up. It has quietly added features that still fail to curb the dangers of a product that is now more than five years old.

4. Plaintiff is one of the people Apple's choices left exposed. In Arizona, her former husband used an Apple AirTag to track her vehicle while the parties were separating. The AirTag was concealed in a magnetic hideaway key box in the engine or wheel-well area of her vehicle.

5. Plaintiff carried an iPhone—the very device Apple built its anti-stalking protections around. Those protections still failed her. Apple's warning came only after Stalker had already hidden the AirTag on her vehicle, and it did not allow her to quickly locate the device herself.

6. Plaintiff and her daughter heard a beeping sound and drove to a repair shop. A mechanic put the vehicle up for inspection and found the AirTag hidden in the vehicle. A repair-shop invoice later documented that an AirTag had been found hidden in a magnetic key box on sheet metal behind the wheel-well area.

7. Apple's design, warning, and release decisions were made at its headquarters in Cupertino, California. Those decisions give rise to liability under California law. Under California law, Apple's acts and omissions constitute negligence, strict products liability for design defect and failure to warn, and violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. In the alternative, and to the extent Arizona law governs any issue, Apple's acts and omissions render the AirTag defective in design and warnings and constitute negligence under Arizona law. Plaintiff seeks actual, punitive, and exemplary damages, restitution, and other relief.

**PARTIES**

8. Plaintiff is an adult individual. She is domiciled in, and a citizen of, the State of Arizona. She resides in Gilbert, Arizona.

9. Defendant Apple Inc. is a corporation organized under the laws of the State of California. Its principal place of business is in Cupertino, California. Apple is therefore a citizen

of California for purposes of 28 U.S.C. § 1332(c)(1). Apple is an American multinational technology company. Among its consumer electronics is the AirTag. Apple oversees all aspects of the AirTag, including its design, manufacture, marketing, technical support, and maintenance. Apple also designs, operates, and maintains the Find My network through which AirTags function, and the iOS unwanted-tracking alerts on which persons like Plaintiff depend. Apple is a "manufacturer" and a "seller" of the AirTag as those terms are defined in A.R.S. § 12-681(3) and (9).

## JURISDICTION, VENUE, AND DIRECT FILING

10. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1). Complete diversity exists. Plaintiff is a citizen of Arizona. Apple is a citizen of California. No defendant shares Plaintiff's citizenship.

11. The amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff seeks actual damages for severe mental anguish, emotional distress, fear for her physical safety and her child's safety, loss of her sense of autonomy and security in her vehicle, repair-shop expenses, legal expenses, and related losses. She also seeks punitive or exemplary damages. Together, these damages exceed the jurisdictional threshold.

12. This Court has general and specific personal jurisdiction over Apple. Apple is incorporated in California and has its principal place of business in this District. Apple is at home here.

13. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Apple resides in this District. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here. On information and belief, Apple designed the AirTag, designed its anti-stalking safeguards, decided to release it, and decided how to warn the public from its Cupertino headquarters. Plaintiff chooses this District as the venue for this action for all purposes, including trial.

14. Plaintiff files this Complaint directly in this District and in MDL No. 3199, as permitted by Pretrial Order No. 1 (the "Direct Filing Order"). Under the Direct Filing Order, Plaintiff designates the Northern District of California as the proper venue for this action.

15. Venue in this District does not depend on the Direct Filing Order. Because Apple resides here and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred here, Plaintiff could have filed this action in this District independent of MDL No. 3199. Plaintiff does not designate any other district as her home or transferor venue.

16. **Intradistrict Assignment.** Under Civil L.R. 3-2(c) and 3-5(b), this action relates to MDL No. 3199. It should be assigned to the Division and the Judge presiding over that proceeding.

## CHOICE OF LAW

17. California law governs Plaintiff's claims. Plaintiff pleads her California-law claims first, in Counts I through V. She pleads her Arizona-law claims in the alternative.

18. California law should govern Plaintiff's claims. This action was filed in this District, and California's choice-of-law rules therefore apply. The conduct Plaintiff challenges occurred in California. On information and belief, Apple's officers and managing agents in Cupertino made the decisions to release the AirTag with safeguards Apple knew were inadequate; to keep selling it after tens of thousands of stalking reports; to deliver safety fixes through owner-dependent firmware; and to describe stalking incidents to the public as "rare." California has a strong interest in regulating the conduct of a California corporation that designs dangerous products in California and sells them nationwide.

19. In the alternative, Arizona law should govern the Arizona-law counts to the extent the Court determines that Arizona has the greater interest in any issue. Plaintiff lived in Arizona, was tracked in Arizona, and suffered her injuries there.

20. Plaintiff does not concede that any conflict exists between Arizona and California law on any issue. If a true conflict exists, Plaintiff reserves the right to brief the choice of law at the appropriate stage.

## GENERAL ALLEGATIONS

21. On April 2, 2024, ITV News in the United Kingdom aired a report on AirTag stalking.[1] In response, Apple stated: "We have identified even more ways we can update AirTag safety warnings and help guard against further unwanted tracking."

22. This promise of future, unspecified action came too late for Plaintiff. Apple's product had already been designed and sold with safeguards that could not reliably prevent or promptly detect stalking. The time for adequate safety warnings and better protections was April 2021, before the AirTag's release.

23. Apple has always known that any safeguards it built into AirTags would only, in Apple's own words, "deter as opposed to prevent malicious use."

24. Each year, an estimated 13.5 million people are stalked in the United States. Nearly one in three women and one in six men experience stalking at some point in their lives.[2]

25. Apple's AirTags have become a critical—and shameful—part of this problem. From 2021 forward, Apple has received over 40,000 stalking reports, at times averaging 1,000 complaints per month.

26. Stalking takes many forms. Most often it involves unwanted, repeated behavior that would cause fear in a reasonable person. Whatever the method, the common thread is the fear it creates in the victim.

27. That fear erodes a victim's autonomy and disrupts daily life. One in eight employed stalking victims misses work because of the victimization. More than half of those lose more than five days of work. One in seven stalking victims moves as a result.[3]

---

[1] ITV News, *AirTags Becoming "Weapon of Choice of Stalkers" as GPS Tracker Cases Rocket by 317%*, YouTube (Apr. 2, 2024), https://www.youtube.com/watch?v=TBhYdgt1FhE.

[2] Stalking Prevention, Awareness, and Resource Ctr. (SPARC), *Stalking Fact Sheet* 1 (2019), https://www.stalkingawareness.org/wp-content/uploads/2019/01/SPARC_StalkngFactSheet_2018_FINAL.pdf.

[3] Katrina Baum et al., U.S. Dep't of Just., Bureau of Just. Stat., *Stalking Victimization in the United States* 1 (Jan. 2009), https://www.justice.gov/archive/ovw/docs/bjs-stalking-rpt.pdf.

28. Stalking victims suffer much higher rates of depression, anxiety, insomnia, and social dysfunction than the general population. Most report a fear of not knowing what will happen next. Stalking is a significant risk factor for homicide in abusive relationships.

29. No one disputes any of this. Stalking is a serious, well-documented phenomenon. It ruins lives, and it ends them.

30. Knowing all this, Apple released a small, concealable device. It allows anyone with an iPhone to continuously and precisely track another person's location for $29.00.

31. Before releasing the AirTag in April 2021, Apple knew it would be used as a stalking tool. Apple even designed certain features to reduce that risk. But Apple released the product knowing those features could not prevent stalking.

32. At release, Apple knew the AirTag's anti-stalking measures were inadequate for at least these reasons:

a. The iPhone notification system alerted users to an unknown AirTag only after three days—an eternity in a stalking situation;

b. Android users received no notifications at all, leaving roughly half of the smartphone-using population unprotected;

c. The AirTag's speaker, meant to alert a victim to an unknown AirTag, was quiet, easily muffled, and easily defeated, and instructions for disabling it were widely available online; and

d. The AirTag's small, light, and concealable form made it trivially easy to hide in a victim's belongings or vehicle.

33. Apple made a calculated business decision to release the AirTag anyway. It put market timing and profits ahead of human safety.

34. The consequences were swift and predictable. Soon after the April 2021 release, reports poured in from people who had been stalked, tracked, and terrorized with AirTags.

35. Stalkers have used AirTags to track victims to their homes, workplaces, and places of refuge. AirTags have been hidden in wheel wells, under bumpers, in purses, in jacket pockets, and in children's backpacks.

36. AirTags have enabled abusers in domestic situations to monitor and control the people closest to them. Many victims had no idea they were being tracked until it was too late.

37. The consequences have been as severe as possible. Multiple murders have occurred in which the killer used an AirTag to track the victim.

38. With its "stalker-proof" protections exposed as inadequate, Apple has spent five years scrambling. Most of these failures persist. Apple keeps reacting to harm its product has caused instead of preventing it. As one commentator put it: "You wouldn't allow a car to come to mass-market without having vigorous testing, so why are we allowing smart tech to just be released and then fixing safety features later?"[4]

## FACTUAL ALLEGATIONS

### A. How the AirTag Works

39. Apple introduced the AirTag in April 2021 as a standalone product.[5] It is about the size of a U.S. quarter. It is a tracking beacon marketed to help consumers find objects such as keys or purses.

40. The AirTag uses Bluetooth Low Energy ("BLE") technology. It broadcasts a rotating identifier. Nearby Apple devices detect that signal and relay the AirTag's location to Apple's servers through the "Find My" network.

41. The Find My network turns the world's Apple devices into a mesh tracking network. Any powered-on, connected iPhone, iPad, or Mac can relay an AirTag's location. There

---

[4] Ellie Fry, *Inside Chilling Rise of AirTag Stalking as Apple Device Is Branded 'Gift to Abusers'*, The Mirror (Apr. 24, 2023), https://www.mirror.co.uk/tech/inside-chilling-rise-airtag-stalking-29746435.

[5] Press Release, Apple Inc., *Apple Introduces AirTag* (Apr. 20, 2021), https://www.apple.com/newsroom/2021/04/apple-introduces-airtag/.

are over two billion active Apple devices. The network works silently, without the knowledge or consent of the device owners who relay the data.

42. As a result, an AirTag's location can be updated virtually anywhere—including on the streets, parking lots, and driveways of Gilbert, Arizona.

**B. Apple Knew the AirTag Would Be Used to Stalk**

43. Before the AirTag's release, commentators, journalists, and domestic violence advocates publicly warned that small, cheap Bluetooth trackers would be used as stalking tools.

44. Apple was well aware of these concerns. Apple anticipated that the AirTag would be used for unwanted tracking.

45. Apple described the AirTag's anti-stalking features as designed to "deter as opposed to prevent" malicious use. That was an admission that Apple knowingly released the product with inadequate safeguards.

46. Apple launched the AirTag with only minimal safeguards. These were (a) an audible alert that sounded after three days away from the owner's iPhone, and (b) a notification that alerted iPhone users—but not Android users—to an unknown AirTag traveling with them.

47. These measures were woefully inadequate. Three days without an alert gives a stalker ample time to learn a victim's home, workplace, and routine.

48. About half of U.S. smartphone users use Android devices. At launch, they had no way to detect an AirTag tracking them. Apple released a "Tracker Detect" app for Android in December 2021, eight months after launch. The app required users to start a scan manually.

49. In February 2022, Apple announced it would cut the time before an unknown AirTag sounds from three days to a random interval between 8 and 24 hours. Even that interval gives a stalker ample time to locate a victim's home, workplace, and routine.

50. Apple's piecemeal approach—half-measures adopted only after public outcry—shows that Apple has consistently put sales ahead of safety.

**C. The AirTag's Safeguards Fail Even iPhone Users**

51. Apple's protections fail even the iPhone users they were built for. Plaintiff is one of them.

52. The iOS "Item Safety Alerts" feature relies on algorithms that often fail to detect tracking in time. An unknown AirTag must travel with the victim for some period before any alert issues. During that window, the stalker can watch the victim's every move.

53. The alerts are easy to miss. They look like ordinary push notifications. They can be buried, swiped away, or simply overlooked. Users who turn off Location Services for privacy reasons also lose these alerts. Apple does not explain this.

54. An alert, standing alone, does not tell the victim where the AirTag is. To find it, the victim must rely on the AirTag's sound. That sound is deficient in at least four ways:

a. It is too quiet. The alert reaches about 60 decibels at most. A purse, fabric, or a car's exterior can muffle it;

b. It is not distinct. The chime sounds like countless other device alerts;

c. It is not continuous. It stops before the person can find the device; and

d. It is easily disabled. The AirTag keeps working after the speaker is removed, and online tutorials explain how.

55. Even when a victim finds an AirTag, her options are limited. She must take physical possession of it and remove its battery. Finding it may be impossible or costly. Dismantling it can compromise evidence. And the stalker can simply deploy another AirTag.

56. Safety updates to AirTag firmware are not pushed automatically to the victim. They depend on the AirTag's owner—the stalker—to install them.

**D. Feasible Safer Alternative Designs Existed**

57. At all relevant times, safer alternative designs existed. Each would have prevented or significantly reduced the risk of AirTag stalking without substantially impairing the product's utility for finding lost items. Each was economically and technologically feasible when the AirTag

left Apple's control, using existing or reasonably achievable scientific knowledge. Among other things, Apple could have:

a. alerted a tracked person within minutes, not hours or days;

b. designed a louder, distinct, continuous, non-removable, and tamper-resistant speaker, and rendered the AirTag non-functional if the speaker were disabled;

c. enabled precise, on-demand location of an unknown AirTag by the person it is traveling with, so the victim could find a concealed device without police help;

d. required identity verification or account linking before activation, creating accountability and deterring anonymous stalking;

e. automatically disabled tracking when an AirTag stays near a non-owner's device for a defined period;

f. required periodic owner re-authentication to prevent indefinite passive tracking;

g. released simultaneous, equivalent, automatic detection for Android users at launch; and

h. made the AirTag larger and more conspicuous, so it could not be easily hidden under a vehicle's bumper.

58. Apple chose not to adopt any of these designs.

**E. Apple Consciously Disregarded the Danger**

59. Only weeks after the AirTag's release, Apple CEO Tim Cook was briefed on press reports describing the AirTag as "a new means of inexpensive, effective stalking." Cook was told that Apple could weather the storm: "At this time, we are not seeing this narrative gain steam in media or on social…." Apple chose to manage the narrative instead of the danger.

60. Apple's officers, directors, and managing agents, including Mr. Cook, authorized, directed, or ratified the decision to release and keep selling the AirTag without adequate safeguards. They did so with knowledge of the ongoing harm.

61. Apple publicly called AirTag stalking “rare.” Its internal data showed more than 40,000 unwanted-tracking reports in the three years after release, ending in April 2024. Apple also knew that most law-enforcement requests it received about AirTags concerned stalking.

62. Apple has also failed to support victims. Its legal-process guidelines state that AirTag pairing history is available for only up to 25 days. Victims who seek protection or prosecution are often left without the evidence they need.

63. The AirTag sells for about $29. Apple has sold tens of millions. Before the AirTag, effective GPS trackers were expensive, needed monthly subscriptions, and were hard to hide. The AirTag removed those barriers.

64. The harm is ongoing. Apple continues to sell AirTags with safeguards that remain inadequate.

**PLAINTIFF’S EXPERIENCE WITH AIRTAGS**

65. At the time of the events described below, Plaintiff lived in Gilbert, Arizona. The tracking described below occurred in and around Gilbert, Arizona.

66. Plaintiff had previously been in a romantic relationship with a man who is referred to here as the “Stalker.” Stalker was Plaintiff’s former husband.

67. Plaintiff used an iPhone. She eventually received an Apple notification that an AirTag was moving with her.

68. On or about April 1, 2022, Stalker placed an Apple AirTag on Plaintiff’s vehicle. The AirTag remained hidden until it was located at a repair shop.

69. Plaintiff did not consent to the AirTag being placed on her vehicle. She did not know it was there when Stalker placed it.

70. When Stalker tracked Plaintiff in 2022, the AirTag’s safety features suffered from the shortcomings alleged above. Unknown-AirTag alerts on iPhones were delayed and unreliable. The AirTag’s audible alert did not sound until hours or days after separation from its owner, and its speaker was faint and could be easily disabled. Users had no reliable means to locate a concealed

AirTag. Those shortcomings caused Plaintiff's late alert, prevented her from finding the device herself, and allowed Stalker to track her undetected until a mechanic found it.

71. Plaintiff and her daughter heard a beeping sound. Plaintiff drove the vehicle to a repair shop because she was concerned that an AirTag was concealed in the vehicle.

72. A mechanic placed the vehicle on a lift, inspected it, and located an AirTag hidden in a magnetic key box in the engine or wheel-well area.

73. A repair-shop invoice later documented that an AirTag was found in a magnetic key box on sheet metal hidden behind the wheel-well area.

74. From the time it was hidden, Apple's Find My network could report Plaintiff's location to Stalker wherever Plaintiff drove and wherever she parked.

75. Plaintiff was in the middle of a difficult separation when the tracking occurred. Stalker had previously recorded her at home and accessed her email without permission.

76. On information and belief, Stalker placed the AirTag after Plaintiff had been at her daughter's school or a school event.

77. Plaintiff reported the incident to her attorney.

78. Plaintiff also identified the mechanic and her daughter as witnesses to the discovery and removal of the AirTag.

79. Apple's delayed and incomplete alert left Plaintiff unable to promptly locate the concealed AirTag without help from a mechanic.

80. Plaintiff would have discovered the AirTag sooner, or Stalker would have been deterred from using it, if Apple had adopted the safer alternative designs and warnings described above.

81. An immediate and persistent alert would have told Plaintiff that she was being followed when the tracking began, not after Stalker had already obtained location information.

82. Precise on-demand location by the tracked person would have helped Plaintiff find the AirTag without having to pay for or rely on a repair-shop inspection.

83. Better account controls and anti-stalking warnings would have made it harder for Stalker to use Apple's product as a tool of coercive monitoring during a separation.

84. Apple's product design left Plaintiff to search her vehicle based on a faint sound and a delayed notification, rather than giving her a reliable way to locate the concealed device.

85. As a direct and proximate result, Plaintiff suffered severe mental anguish and emotional distress. She was terrified when she learned that Stalker had hidden an AirTag on her vehicle and could monitor her movements.

86. Plaintiff's distress has manifested in physical symptoms, including insomnia, loss of appetite, headaches, panic attacks, or other physical symptoms.

87. Plaintiff has also lost money or property because of Apple's conduct, including auto-shop expenses, legal expenses, safety-related expenses, and other out-of-pocket losses.

## STATUTE OF LIMITATIONS AND TOLLING

88. Plaintiff's claims are timely under the law of either State. Under Arizona law, a product liability action as defined in A.R.S. § 12-681 must be commenced within the period prescribed in A.R.S. § 12-542, subject to the provisions of A.R.S. § 12-551. Under California law, Plaintiff's negligence and products liability claims are governed by the two-year period of Cal. Civ. Proc. Code § 335.1, and her Unfair Competition Law claims are governed by the four-year period of Cal. Bus. & Prof. Code § 17208. Plaintiff's two-year claims were filed within the limitations period as tolled by the pendency of the putative class action described below. Her Unfair Competition Law claims are timely without tolling.

89. On December 5, 2022, a putative class action was filed against Apple in the U.S. District Court for the Northern District of California. It is captioned *Hughes v. Apple, Inc.*, No. 3:22-cv-07668-VC (the "*Hughes* Action"). The *Hughes* Action asserted claims on behalf of a proposed nationwide class of people who were tracked, stalked, or otherwise harmed through AirTags. It arose from the same course of conduct alleged here: Apple's release and continued sale of the AirTag without adequate safeguards against unwanted tracking.

90. Plaintiff was tracked without her knowledge or consent by a concealed AirTag while the *Hughes* Action was pending or shortly before that action was filed. She is, and at all relevant times was, a member of the putative class asserted in the *Hughes* Action. She did not opt out. She was not a named plaintiff. She relied on the named plaintiffs to press the class's claims.

91. On March 9, 2026, the Honorable Vince Chhabria entered an order denying class certification in the *Hughes* Action. (Hughes Action, ECF No. 287.)

92. Under *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554 (1974), "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Once tolled, the limitations period "remains tolled for all members of the putative class until class certification is denied." *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 354 (1983).

93. Plaintiff's claims accrued no earlier than 2022, when she learned she was being tracked. The Hughes Action was filed on December 5, 2022. To the extent any limitations period began to run before that date, it was tolled when Hughes was filed and remained tolled until class certification was denied on March 9, 2026. Plaintiff filed this action well within the remaining limitations period.

94. The purposes of limitations statutes are fully served. The *Hughes* Action put Apple on notice of the claims and of the generic identities of the potential plaintiffs. Since 2022, Apple has been on notice to preserve evidence about AirTag stalking of class members like Plaintiff.

95. In the alternative, any limitations period was tolled under applicable equitable-tolling principles and the discovery rule.

**COUNT I**

**NEGLIGENCE**

**(California Law)**

96. Plaintiff repeats and realleges all preceding paragraphs.

97. Under California negligence principles, Apple owed Plaintiff a duty of reasonable care in the design, testing, marketing, distribution, and post-sale support of the AirTag.

98. Each relevant consideration supports that duty. Harm to people like Plaintiff was highly foreseeable. The certainty that such people would be injured was great. The connection between Apple's conduct and Plaintiff's injuries was close. Moral blame attaches to Apple's knowing release of an inadequately safeguarded product. And public policy favors preventing the harm.

99. As the manufacturer that designed the AirTag and placed it into the stream of commerce, Apple had a duty to avoid exposing foreseeable users and bystanders—including persons foreseeably tracked by the device—to unreasonable risks of harm. That duty included designing the AirTag so it would not create an unreasonable risk of use as an instrument of criminal stalking. Apple specifically anticipated and acknowledged that risk before launch.

100. Apple breached its duty. Among other things, Apple released the AirTag knowing its safeguards would only "deter as opposed to prevent" stalking; designed alerts that issue only after a tracking device has traveled with the victim for hours or days; designed a speaker too quiet, too brief, and too easily muffled to lead a victim to a concealed device; failed to adopt the feasible safer alternative designs alleged above; failed to adequately test the AirTag's anti-stalking features in real-world concealment scenarios, including placement inside a vehicle or a child's clothing; and continued to sell the AirTag after learning of tens of thousands of stalking reports, while publicly minimizing the problem.

101. Apple's breach was a substantial factor in causing Plaintiff's injuries. The Stalker's use of the AirTag was not an unforeseeable superseding cause. It was the very harm that Apple anticipated, was warned about, and designed its safeguards—inadequately—to prevent.

102. As a direct and proximate result of Apple's negligence, Plaintiff suffered the injuries described above and is entitled to compensatory damages.

103. Apple acted with malice, oppression, or fraud within the meaning of Cal. Civ. Code § 3294. Its officers, directors, and managing agents knew of the probable dangerous consequences

of the AirTag's design and consciously chose not to avoid them. Plaintiff is entitled to punitive damages under California law.

**COUNT II**

**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

**(California Law)**

104. Plaintiff repeats and realleges all preceding paragraphs.

105. Apple designs, manufactures, distributes, and sells AirTags. Apple placed the AirTags used to track Plaintiff into the stream of commerce.

106. The AirTag is defective in design under the consumer-expectations test. It failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable way. Consumers may know that tracking devices can be misused. But an ordinary consumer would reasonably expect that Apple had built effective safeguards to detect and prevent unauthorized tracking, particularly given Apple's promotion of the AirTag's anti-stalking features. An ordinary iPhone user would expect her iPhone to warn her promptly when an unknown AirTag was being used to follow her, to help her find it, and to keep warning her until the tracking stopped. The AirTag failed those expectations.

107. The AirTag is also defective in design under the risk-benefit test. Its foreseeable risk of facilitating stalking outweighs the benefits of its design. Practical, technically feasible alternative designs existed that would have prevented or significantly reduced Plaintiff's injuries. They include immediate, reliable, and tamper-resistant alerts; alerts that disclose every unknown AirTag traveling with the tracked person; precise on-demand location by the tracked person; and design features that reduce covert placement and continued tracking.

108. The design defect was a substantial factor in causing Plaintiff's injuries. The Stalker's criminal use of the AirTag was not an unforeseeable superseding cause. It was the very harm the AirTag's anti-stalking safeguards were designed—and failed—to prevent. Apple's admission that its safeguards would only "deter as opposed to prevent" malicious use confirms that Apple anticipated and accepted the risk of exactly this conduct.

109. As a direct and proximate result of the AirTag's defective design, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known safety risks constitutes malice, oppression, or fraud under Cal. Civ. Code § 3294. Plaintiff is entitled to punitive damages under California law.

**COUNT III**

**PRODUCTS LIABILITY: FAILURE TO WARN**

**(California Law)**

110. Plaintiff repeats and realleges all preceding paragraphs.

111. Apple designed, manufactured, distributed, and sold the AirTags used to track Plaintiff.

112. When the AirTag left Apple's possession, it posed known or knowable risks. Those risks included covert tracking of non-consenting persons and the failure of Apple's alerts to notify iPhone users like Plaintiff in time, to locate the device, or to keep warning until the tracking stopped. Apple knew of these risks, or could have known of them in light of the information available to it at the time of manufacture and distribution. That information included its own pre-launch assessment that its safeguards would only "deter as opposed to prevent" malicious use.

113. These risks presented a substantial danger when the AirTag was used in an intended or reasonably foreseeable way. Ordinary consumers, and people like Plaintiff who could be tracked by an AirTag, would not have recognized them.

114. Apple failed to adequately warn of these risks or to instruct the public on how to detect and guard against unwanted tracking. Among other things, Apple failed to provide timely alerts to people being tracked; failed to provide alerts that are persistent, distinct, and accompanied by a sound loud and continuous enough to locate a concealed device; failed to instruct tracked persons how to locate an AirTag hidden in a vehicle or personal effects; failed to disclose that disabling Location Services would also disable unknown-AirTag alerts; and failed to accurately disclose the scope of AirTag stalking, which Apple publicly called "rare." Apple also failed to act

as a reasonable manufacturer would have acted, after sale, once it learned of tens of thousands of stalking reports.

115. Apple's failure to warn was a substantial factor in causing Plaintiff's injuries. Had Apple given adequate warnings and instructions, Plaintiff would have followed them. She would have found the device sooner, and avoided or reduced the harm alleged above.

116. As a direct and proximate result of Apple's failure to warn, Plaintiff suffered the injuries described above and is entitled to compensatory damages. Apple's conscious disregard of the known risk also entitles Plaintiff to punitive damages under Cal. Civ. Code § 3294.

**COUNT IV**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNLAWFUL PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

117. Plaintiff repeats and realleges all preceding paragraphs.

118. The Unfair Competition Law ("UCL") prohibits any unlawful, unfair, or fraudulent business act or practice. Cal. Bus. & Prof. Code § 17200.

119. Apple engaged in business acts and practices in California. On information and belief, Apple designed the AirTag and its safeguards, decided to release and keep selling it, and decided how to warn the public at its Cupertino headquarters.

120. Apple's conduct is unlawful. As alleged above, it constitutes negligence and products liability under California law. Each of those independent violations serves as a predicate for the UCL's unlawful prong.

121. Apple's conduct also violates the policy and purpose of the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq. Apple designed, released, and kept selling the AirTag without adequate safeguards against unconsented location tracking. It failed to give Plaintiff a timely and reliable way to detect and locate the AirTag tracking her. In doing so, Apple aided, and was a substantial factor in enabling, the electronic tracking of Plaintiff's location and movements by a third party without her consent.

122. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct, as alleged above.

123. Under Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Apple from engaging in the unlawful business practices alleged here in connection with the sale of AirTags, and restitution to the extent permitted by law.

**COUNT V**

**VIOLATION OF THE UNFAIR COMPETITION LAW: UNFAIR PRONG**

**(Cal. Bus. & Prof. Code §§ 17200 et seq.)**

124. Plaintiff repeats and realleges all preceding paragraphs.

125. Apple's business practices are unfair. Releasing and continuing to sell AirTags with safeguards Apple knew were inadequate is immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers. The gravity of the harm far outweighs any utility of Apple's conduct.

126. Apple's business practices are also unfair because they undermine public policy tethered to specific constitutional and statutory provisions. Those provisions include the California Invasion of Privacy Act, Cal. Penal Code §§ 630 et seq., and the right to privacy in the California Constitution, Cal. Const. art. I, § 1.

127. Apple's business practices are further unfair because (1) the injury to consumers is substantial; (2) the injury is not outweighed by any countervailing benefit to consumers or competition; and (3) consumers could not reasonably have avoided it. Plaintiff could not avoid a danger hidden in her vehicle that her iPhone did not timely disclose or help her locate.

128. Reasonably available alternatives existed to further Apple's legitimate business interests. Apple's practices are a continuing course of unfair competition because Apple continues to sell AirTags.

129. Plaintiff has standing under Cal. Bus. & Prof. Code § 17204. She suffered injury in fact and lost money or property as a result of Apple's conduct, as alleged above.

130. Under Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Apple from engaging in the unfair business practices alleged here in connection with the sale of AirTags, and restitution to the extent permitted by law.

**COUNT VI**

**STRICT PRODUCTS LIABILITY: DESIGN DEFECT**

**(Arizona Law; Pleaded in the Alternative)**

131. Plaintiff repeats and realleges all preceding paragraphs.

132. Apple designed, manufactured, marketed, and sold the AirTag used to track Plaintiff. Apple placed the AirTag into the stream of commerce in the regular course of its business. The AirTag reached Stalker without substantial change in its condition.

133. Arizona defines a product liability action as any action against a manufacturer or seller of a product for damages for bodily injury, death, or property damage caused by or resulting from the design, testing, packaging, labeling, sale, or use of a product, the failure to warn or protect against a danger or hazard in the use or misuse of the product, or the failure to provide proper instructions. Apple is a "manufacturer" because it designs, assembles, produces, and otherwise prepares the AirTag before its sale.

134. When the AirTag left Apple's control, it was in a defective condition. Apple made the AirTag as it intended, but the design lacked safeguards that would timely alert, and allow a tracked person to locate, a concealed AirTag. That defective design also made the AirTag unreasonably dangerous. Defectiveness and unreasonable danger are distinct elements under Arizona law, and Plaintiff alleges each. Use of the AirTag to covertly track a person is a reasonably foreseeable use and misuse that an ordinary and prudent manufacturer should have anticipated. Apple actually foresaw it, as alleged above. The risk is grave: stalking, terror, assault, and loss of personal safety.

135. A manufacturer is liable for harm caused by a product sold in a defective condition unreasonably dangerous. A plaintiff must first establish that the product was sold in a defective condition and, if so, that the defect rendered the product unreasonably dangerous. The plaintiff must also show that the defect existed when the product left the manufacturer's control and

proximately caused the injury. The consumer expectation test applies only when an ordinary consumer, based on experience, has formed expectations about how safely the product will perform. When it does not apply, the fact finder employs a risk/benefit analysis that weighs the risks and benefits of the product as designed. Plaintiff never purchased or used the AirTag. Ordinary consumers have no experience-based expectations about how safely an AirTag's anti-stalking features will perform for a person being covertly tracked. The risk/benefit analysis therefore applies.

136. Weighed as designed, the AirTag's risks outweigh its benefits. The likelihood and seriousness of injury are high: Apple received tens of thousands of stalking reports, and the harm includes stalking, terror, and assault. The danger is not obvious to the people it threatens, because the AirTag is small and designed to be concealable. The AirTag's benefit—helping owners find lost items—does not depend on delayed, quiet, or easily defeated anti-stalking alerts. Apple could have eliminated much of the danger without seriously impairing the AirTag's usefulness or making it unduly expensive. The feasible features alleged above, including immediate and persistent alerts, precise on-demand location by the tracked person, and stronger anti-stalking account controls, show that Apple could have done so.

137. The design defect was a proximate cause of Plaintiff's injuries. Stalker's use was not an unforeseeable, superseding cause. It was the precise use Apple anticipated, was warned about, and designed safeguards—inadequately—to address. Because that use was reasonably foreseeable, the misuse defense in A.R.S. § 12-683(3) does not apply. Nor did the AirTag's design conform with the state of the art when first sold, because the safer alternative designs alleged above were technically feasible at that time. *See* A.R.S. § 12-683(1).

138. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above, including bodily injury in the form of the physical manifestations of her distress, severe mental anguish, loss of safety, and economic loss.

139. Apple acted with an evil mind. Apple consciously pursued a course of conduct—releasing and continuing to sell the AirTag with safeguards it knew would only "deter as opposed to prevent" stalking—knowing that conduct created a substantial risk of significant harm to others.

Its conduct was aggravated and outrageous. Plaintiff will prove these facts by clear and convincing evidence and is entitled to punitive damages under Arizona law.

**COUNT VII**

**STRICT PRODUCTS LIABILITY: FAILURE TO WARN**

**(Arizona Law; Pleaded in the Alternative)**

140. Plaintiff repeats and realleges all preceding paragraphs.

141. To recover for a failure to warn in strict liability, a plaintiff must show that (1) the defendant had a duty to warn; (2) the lack of a warning made the product defective and unreasonably dangerous; (3) the lack of sufficient warnings existed when the product left the defendant's control; and (4) the failure to give an adequate warning proximately caused the injury. When the AirTag left Apple's control, Apple knew or reasonably should have foreseen the risk that the AirTag would be used to covertly track and stalk people, and it had a duty to warn of that danger.

142. Apple failed to give adequate warnings of that danger, and failed to give adequate instructions to avoid it, to the people the danger threatened. Among other things, Apple failed to:

a. provide timely alerts to people being tracked, rather than alerts that issue only after the AirTag has traveled with them for hours or days;

b. provide alerts that are persistent, distinct, and accompanied by a sound loud and continuous enough to locate a concealed device;

c. instruct tracked persons how to locate an AirTag hidden in a vehicle or personal effects;

d. disclose that disabling Location Services would also disable unknown-AirTag alerts; and

e. accurately disclose the scope of AirTag stalking, which Apple publicly called "rare."

143. Apple's alerts are themselves warnings directed to the people being tracked. Plaintiff was the intended recipient of those warnings. The warning she received came only after Stalker had already hidden the AirTag and Apple's system did not give her a reliable way to locate it.

144. The lack of adequate warnings and instructions made the AirTag defective and unreasonably dangerous. That deficiency existed when the AirTag left Apple's control. The risk was not open and obvious to Plaintiff, and it was not a matter of common knowledge. The AirTag was hidden in her vehicle.

145. The warning defect was a proximate cause of Plaintiff's injuries. Adequate, timely warnings and instructions would have allowed her to find and disable the AirTag sooner and avoid or reduce the harm alleged above.

146. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above, including bodily injury in the form of the physical manifestations of her distress, severe mental anguish, loss of safety, and economic loss.

**COUNT VIII**

**NEGLIGENCE**

**(Arizona Law; Pleaded in the Alternative)**

147. Plaintiff repeats and realleges all preceding paragraphs.

148. Apple owed Plaintiff a duty of reasonable care. A duty based on relationship may arise from conduct the defendant undertakes. Arizona courts recognize that a duty may arise under Restatement (Second) of Torts § 324A, even without a direct relationship. Apple undertook conduct that created a relationship with Plaintiff. It designs, operates, and maintains the Find My network that reported her location. It also undertook to warn persons in Plaintiff's position through unwanted-tracking alerts sent to their own devices, which made her the intended recipient of Apple's safety system. That undertaking gave rise to a duty to use reasonable care in designing, testing, marketing, and supporting the AirTag and its anti-stalking safeguards, and in warning of the AirTag's dangers.

149. Independently, Arizona public policy, as expressed in its statutes, gives rise to Apple's duty. Arizona recognizes a duty of care that arises from statutes, even without a special relationship. *Gipson v. Kasey*, 214 Ariz. 141 (2007). Arizona makes it a felony to use any electronic, digital or global positioning system device to surveil a specific person continuously for twelve hours or more or on two or more occasions over a period of time, however short, without authorization. A.R.S. § 13-2923(D)(1)(a)(ii). That statute reflects Arizona's policy of protecting

people like Plaintiff from covert electronic location tracking. Apple designed, sold, and operates the device and network that made this tracking possible. It is therefore within the class of actors whose conduct that policy addresses.

150. Plaintiff relied on Apple's undertaking. She carried an iPhone, the device on which Apple built its anti-stalking protections, and she depended on its unwanted-tracking alerts to tell her if an unknown AirTag was traveling with her. Apple's public statements that its safeguards protect people from unwanted tracking, and that AirTag stalking is "rare," encouraged that reliance.

151. Apple's failure to exercise reasonable care in performing its undertaking increased the risk of harm to Plaintiff. Its alerts signaled a level of protection the system did not deliver. Because Plaintiff's iPhone gave no timely warning, she had no reason to search her vehicle, and Stalker continued to track her undetected until Apple's delayed alert finally issued and a mechanic located the device.

152. A negligent-design claim asks whether the manufacturer acted unreasonably at the time of design in light of the foreseeable risk of injury from use of the product. Apple did.

153. Apple breached that duty. Among other things, Apple:

a. released the AirTag knowing its safeguards would only "deter as opposed to prevent" stalking;

b. designed alerts that issue only after a tracking device has traveled with the victim for hours or days;

c. designed a speaker too quiet, too brief, and too easily muffled to lead a victim to a concealed device;

d. failed to adopt the feasible safer alternative designs alleged above;

e. failed to adequately test the AirTag's anti-stalking features in real-world concealment scenarios; and

f. continued to sell the AirTag after learning of tens of thousands of stalking reports, while publicly minimizing the problem.

154. Apple's breaches were a proximate cause of Plaintiff's injuries. Although foreseeability does not create Apple's duty, it bears on breach and causation. Stalker's use was

foreseeable. It was the very harm Apple's safeguards were meant to address, and it was not a superseding cause.

155. As a direct and proximate result, Plaintiff suffered the injuries and damages alleged above.

156. Apple acted with an evil mind. It consciously pursued a course of conduct knowing that conduct created a substantial risk of significant harm to others, and its conduct was aggravated and outrageous. Plaintiff will prove these facts by clear and convincing evidence and is entitled to punitive damages under Arizona law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment against Apple and award the following relief:

a. Judgment in Plaintiff's favor on the causes of action in this Complaint, including, in the alternative, the Arizona-law causes of action;

b. Actual damages, including for bodily injury, property damage, past and future mental anguish and emotional distress and their physical manifestations, and the cost of any related treatment, in an amount to be proven at trial and exceeding $75,000;

c. Punitive damages under Cal. Civ. Code § 3294 and, in the alternative, punitive damages under Arizona law, in an amount to be proved at trial;

d. Restitution under Cal. Bus. & Prof. Code § 17203 to the extent permitted by law;

e. Reasonable attorney's fees under Cal. Civ. Proc. Code § 1021.5 and any other applicable law;

f. Pre-judgment and post-judgment interest as permitted by law;

g. Costs of suit; and

h. Such other relief as the Court deems just and proper.

Dated: November 3, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ ______________________
Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff

**DEMAND FOR JURY TRIAL**

Under Federal Rule of Civil Procedure 38(b) and Civil L.R. 3-6, Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 3, 2026

Respectfully submitted,
**STINAR LANNEN, PLLC**

By: /s/ ______________________
Parker G. Stinar, Esq. (pro hac vice forthcoming)
Patrick C. Lannen, Esq. (pro hac vice)

Counsel for Plaintiff